Frank S. Clowney III (California Bar # 081694)
Michael A. Clowney (California Bar #344179)
**LAW OFFICE OF FRANK S. CLOWNEY III**
550 West C Street, Suite 1690
San Diego, California 92101
Telephone: (619) 557-0458
E-mail: worklaw@sbcglobal.net
          michaelaclowney@gmail.com

Dennis J. Sullivan (*Pro hac vice pending*)
Texas State Bar No. 19473750
720 Rusk Street
Houston, Texas 77002
Tel: (713) 336-7200
Fax: (713) 336-7250
dsullivan@ss-pc.com

Attorneys for Plaintiffs Eduardo Alexis Leiva Castro and Joshua Luis

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO ALEXIS LEIVA CASTRO and JOSHUA LUIS, <br><br> Plaintiffs, <br><br> vs. <br><br> BAE SYSTEMS, INC., BAE SYSTEMS HOLDINGS, INC., BAE SYSTEMS HOLDINGS, LTD., BAE SYSTEMS PLC., and DOES 1 through 100, Inclusive, <br><br> Defendants. | CASE NO. '22CV1062 AJB  DEB <br><br> **COMPLAINT FOR DAMAGES FOR:** <br><br> **1. NEGLIGENCE;** <br> **2. STRICT PRODUCT LIABILITY;** <br> **3. BREACH OF WARRANTY** <br><br> **DEMAND FOR JURY TRIAL** |

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA, PLAINTIFFS EDUARDO ALEXIS LEIVA CASTRO AND JOSHUA LUIS RESPECTFULLY ALLEGE:

### SUBJECT MATTER JURISDICTION

1.    This action is brought based on the general maritime law and in the alternative the Court's diversity jurisdiction [28 U.S.C. §§ 1441 and 1446]. Jurisdiction in this Court is present pursuant to the "Savings to Suitors" clause of the Judiciary Act of 1789, 28 U.S.C. § 1333 *et seq.,* as well as the above cited

statics.

### THE PARTIES, PERSONAL JURISDICTION AND VENUE

2.     Plaintiff Eduardo Alexis Leiva Castro ("Leiva") is a citizen of the State of Colorado who is on active duty with the United States Marine Corps ("Marine Corps") stationed at Camp Pendleton in the County of San Diego.

3.     Plaintiff Joshua Luis ("Luis") is a citizen of the State of Illinois who is on active duty with the Marine Corps stationed at Camp Pendleton in the County of San Diego.

4.     Defendant BAE SYSTEMS, INC. ("BAE Systems") is a Delaware Corporation registered with the State of California, Secretary of State and doing business in the County of San Diego where it fulfills contracts with the United States Government related to, among other things, the development, design, manufacture, assembly, inspection, maintenance, testing, training, advertising, warranting, authoring, publishing, sale and delivery of Amphibious Assault Vessels ("AAV"), and their component parts, manuals, warnings and literature, including the Subject AAV.   The Subject AAV was designed, built, repair, maintained and delivered in the County of San Diego.   The Court has personal jurisdiction over the defendant based on its activity within the County of San Diego.   Defendant BAE SYSTEMS, INC. can be served with service of process at 1505 Corporation 112 C T Corporation System 330 N. Brand Blvd., Ste. 700 Glendale, CA 91203.

5.     Defendant BAE SYSTEMS HOLDINGS, INC. ("BAE Holdings") is a Delaware Corporation registered with the State of California, Secretary of State and doing business in the County of San Diego where it fulfills contracts with the United States Government related to, among other things, the development, design, manufacture, assembly, inspection, maintenance, testing, training, advertising, warranting, authoring, publishing, sale and delivery of Amphibious Assault Vessels ("AAV"), and their component parts, manuals, warnings and literature,

including the Subject AAV.   The Subject AAV was designed, built, repair, maintained and delivered in the County of San Diego.   Under information and belief  Defendant BAE SYSTEMS HOLDING, INC. is the parent company of DEFENDANT BAE SYSTEMS, INC.  The Court has personal jurisdiction over the Defendant based on its activity within the County of San Diego. Defendant BAE SYSTEMS HOLDING, INC. can be served with service of process at 1505 Corporation 112 C T Corporation System 330 N. Brand Blvd., Ste. 700 Glendale, CA 91203.

6.      Defendant BAE SYSTEMS HOLDING, Ltd ("BAE Ltd") is a foreign corporation having its principal place of business, under information and belief,  at Warwick House, PO Box 87 Aerospace Centre, Farnborough GU14 6YU United Kingdom.  Defendant BAE SYSTEMS HOLDING, Ltd is the parent company of BAE SYSTEMS HOLDING, INC and is doing business in the County of San Diego where it fulfills contracts with the United States Government related to, among other things, the development, design, manufacture, assembly, inspection, maintenance, testing, training, advertising, warranting, authoring, publishing, sale and delivery of Amphibious Assault Vessels ("AAV"), and their component parts, manuals, warnings and literature, including the Subject AAV.  The Subject AAV was designed, built, repair, maintained and delivered in the County of San Diego. The Court has personal jurisdiction over the Defendant based on its activity within the County of San Diego. Defendant BAE SYSTEMS HOLDING, Ltd. can be served with service of process through the Hague Convention at Warwick House, PO Box 87 Aerospace Centre, Farnborough GU14 6YU United Kingdom.

7.      Defendant BAE SYSTEMS PLC ("BAE PLC") is a foreign corporation having its principal place of business at Warwick House, PO Box 87 Aerospace Centre, Farnborough GU14 6YU United Kingdom. All Defendants, including BAE SYSTEMS PLC act in concert regarding the allegations set forth in this Complaint and, therefore, the conducts described herein are fairly attributable

to all entities. The Court has personal jurisdiction over the Defendant based on its activity within the County of San Diego. Defendant BAE SYSTEMS PLC. can be served with service of process through the Hague Convention at Warwick House, PO Box 87 Aerospace Centre, Farnborough GU14 6YU United Kingdom.

8.     This Court has personal jurisdiction over all Defendants and all defendants are amenable to service of summons for this action. Defendants have sought protection and benefit from the laws of the State of California by maintaining one or more of its United States affiliates Defendant BAE USA in this District and/or by placing infringing products and services into the stream of commerce through an established distribution channel with the awareness and/or intent that they will be purchased by consumers in this District.

9.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 100, inclusive, are unknown to Plaintiffs, who are therefore sued by those fictitious names.  Plaintiffs are informed and believe, and thereon allege, that each of the defendants were in some manner legally responsible for the events and happenings alleged in this complaint and legally caused the injuries and damages alleged herein, and Plaintiffs will amend this complaint to show their true names and capacities when the same have been ascertained.

10.     At all times herein mentioned, Defendants, and each of them, and their aggregates, associates, and partners, and each of them, were the agents, servants, employees, assignees, permissive users, successors in interest or joint venturers of each other, and were acting within the time, purpose, or scope of such agency or employment or permission; and all acts or omissions alleged herein of each such Defendant were authorized, adopted, approved, or ratified by each of the other Defendants.

11.     This Court has personal jurisdiction over each defendant because Defendant BAE SYSTEMS, INC. and DOES 1 through 100, and each of them,

were and are conducting business throughout the County of San Diego, California.

12.   In addition, a substantial part of the events, acts or omissions giving rise to the claim, including but not limited to, the development, design, manufacture, assembly, testing, inspecting, maintaining, training, advertising, warranting, authoring, publishing manuals, sale, and delivery of AAVs, and its component parts, manuals, warnings, and literature, including the Subject of AAVs, occurred in the County of San Diego, California.  Defendants, BAE SYSTEM, INC. and DOES 1 through 100, and each of them, were at all times relevant, authorized to do business, and were doing business, in the County of San Diego.

13.   Venue is proper with this Court because at all times mentioned herein, and at the times of the filing of this action, the events set forth herein occurred in the County of San Diego, California.

14.   The damages alleged herein are in excess of the minimum jurisdictional limits of this Court.

## FACTS COMMON TO ALL CAUSES OF ACTION

15.   On July 30, 2020, at approximately 6:15 p.m. (Pacific Daylight Time), a Marine Corps Amphibious Assault Vehicle, No. 523519 ("Subject AAV" or generally "AAV") assigned to the Battalion Landing Team 1st Battalion, 4th Marines, 15th Marine Expeditionary Unit stationed at Camp Pendleton in the County of San Diego, sank in the Pacific Ocean while attempting to return from San Clemente Island off the coast of California to the USS Somerset after a training exercise. The USS Somerset (LPD-25) is a San Antonio-class amphibious transport dock of the United States Navy. The AAV was manned by three AAV crewmen and had twelve Marines and one Sailor aboard.

16.   As a result of the AAV sinking and the negligence of defendant BAE Systems and DOES 1 through 100, inclusively, eight (8) Marines and a Sailor drowned.  Plaintiffs Leiva and Luis were Marines aboard the AAV who survived

the sinking but sustained physical and mental injuries while trapped inside the AAV with the other service members who perished and while escaping the sinking AAV.

17.     On the afternoon of July 30, 2020, the subject AAV experienced multiple serious and catastrophic mechanical, design and manufacturing failures which resulted in the vessel losing transmission fluid, forward propulsion, freezing the engine and becoming dead in the water. The , flooding the AAV flooded with water from multiple leaking sites and sinking to the bottom of the ocean trapping the servicemen inside while it attempted to return to the USS Somerset (LPD-25) from which it had departed earlier in the day. Plaintiffs Leiva and Luis were able to escape the AAV just before it sank but witnessed the desperate suffering and death physical and mental suffering of their fellow Marines before escaping.

18.     A post-incident investigation into the sinking of the vessel revealed the subject AAV became disabled in the water due to leaking transmission fluid and that the vessel was flooding with water at multiple locations due to degraded and ineffective seals, holes, and the failure of the engine plenum doors to close and seal properly. The failure of the transmission not only caused the vehicle to lose propulsion and become dead in the water, but it also caused the bilge pumps to stop working and expel the water that was pouring into the vessel.

19.     The servicemen were trapped inside the dark vehicle unable to see due to the non-functioning Emergency Egress Lighting System which left the cargo hold so dark they could not see the cargo hatch lock. Critically, the defective design of the cargo hatch door makes opening the hatch very difficult, sometimes requiring the occupants to use a hammer on the handle just to get the door to open. In this case, only one of the two cargo hatch doors whereas opened prior to the sinking making egress impossible once the vehicle submerged.

20.     The fact that the pumps were not working, and water was flooding into the cargo hold, rising water entered the engine compartment and caused the

electrical generator to fail, in turn caused the electric bilge pumps to cease operating. It is believed and alleged that Defendants knew prior to the subject incident that the sole means of escape was through defectively designed cargo doors. The cargo hatch doors, which are supposed to serve as the means of egress in the event of an emergency but were defectively designed to be too heavy to open and/or keep opened, preventing any escape in case of such aa sinking like the one in this incident sinking that occurred. The cargo hatch doors were defectively designed too heavy and narrow to allow the Marines and Sailor to escape as the vessel submerged, thereby trapping them, and causing them to descend with the vessel. The accumulation of water from the several leaks and the water which entered into the vessel through the open cargo hatch completely overwhelmed the inadequate bilge pumps and caused the vessel to sink very quickly.

21. It is believed and alleged Defendants knew prior to the subject incident of the AAV was defectively designed,  and it was manufactured and maintained such that a sinking was imminent. There was no way for everyone to get out alive in a sinking as, the sole means of escape in an imminent sinking was through defectively designed cargo hatch doors. The cargo hatch doors, which are the only means of egress in an emergency sinking and were defectively designed, manufactured, installed and maintained including, but not limited to, a locking system that was difficult to open, an inoperable lighting system, doors that were too difficult and heavy to open with the weight of the water and/or keep opened, or lock in an open position with the weight of the water, doors that were too narrow to easily escape with bulky gear on, preventing everyone from escaping in an imminent sinking that occurred, like the one in this incident, thereby trapping them, and causing them to drown as the vehicle descended 385 feet onto the ocean floor. Plaintiffs are informed for over 45 minutes the servicemen were unable to open and/or keep open the subject defective cargo hatch door killing the other marines and sailor. But for the defectively designed and manufactured cargo doors

Plaintiffs' injuries and trauma would not have occurred.

22.    The Defendants were and are charged with supplying the AAVs and related components for use in AAVs that meet the government's performance requirements as well as safety and reliability standards.

23.    The design, manufacture, maintenance, inspection, and assembly of the subject AAV were and are defective and unreasonably dangerous because the AAV is not safe for its intended use, for which it was supplied, does not meet the performance requirements of the U.S. Navy and Marine Corps, and does not meet required manufacturing and quality control standards.

24.    The design, manufacture, maintenance, inspection, and assembly of the subject AAV were and are defective and unreasonably dangerous because the AAV did not have appropriate safety mechanisms to allow personnel to escape in the event of an emergency.

25.    It is believed and alleged that Defendants knew prior to the subject incident that the sole means of escape was through defectively designed cargo doors. The cargo hatch doors, which are supposed to serve as the means of egress in the event of an emergency were defectively designed to be too heavy to open and/or keep opened, preventing any escape in case of such a sinking that occurred.

26.    The cargo hatch doors were defectively designed too heavy and narrow to allow the Marines and Sailor to escape as the vessel submerged, thereby trapping them, and causing them to descend with the vessel.

27.    The Defendants have failed in their duties to the government, including the United States Navy and Marine Corps, to ensure that the equipment that it designs, manufactures, assembles, inspects, maintains, tests, supply, and sell is seaworthy, which it is not. Rather, through manufacturing flaws and quality assurance failures provided instead an unreliable, unsafe, and defectively manufactured AAV, including its component parts, which resulted in the sinking of the vessel that is the subject of this lawsuit.

28.     The BAE design and specifications were not approved by, or within the knowledge of, the United States Government, Military, Navy or any of its departments or branches.

29.     As a direct, proximate, and legal result of the conduct of Defendants BAE Systems, BAE, its agents, and employees and DOES 1 through 100, inclusively, plaintiffs Leiva and Luis were injured in their health, strength, and activity, sustaining injury to their bodies, and fright, shock and injury to their nervous systems and persons.  All of the injuries sustained have caused and will continue to cause the plaintiffs great mental, physical, emotional, and nervous pain, anguish, suffering and loss of enjoyment of life.  Plaintiffs are informed, and believe, and thereon allege that the injuries will result in some permanent damage to each of them in an amount in the excess of $75,000.00 each.

30.     As a further direct, proximate, and legal result of the conduct of the defendants BAE Systems and DOES 1 through 100, inclusively, plaintiffs Leiva and Castro have incurred, and will continue to incur, medical and related health care expenses, along with other special and out of pocket damages, in amounts according to proof at the time of trial.

31.     As a further direct, proximate, and legal result of the conduct of the defendants BAE Systems and DOES 1 through 100, inclusively, plaintiffs have been, and will be, prevented from attending to their usual occupations.  The ability of the plaintiffs to earn an income was also impaired, the combined result of which has and shall cause each plaintiff to suffer a loss of earnings, benefits and earning capacity, in amounts according to proof at the time of trial.

## FIRST CAUSE OF ACTION

### NEGLIGENCE

32.     Plaintiffs incorporate by reference each prior and subsequent allegation as though fully set forth herein.

33.     Plaintiffs are informed, and believe, and thereon allege, that at all

times herein Defendants, and each of them, were engaged in the business of, among other things, designing, manufacturing, assembling, maintaining, inspecting, testing, training, marketing, distributing, advertising, warranting, selling, and monitoring its products, including the Subject AAV and its component parts.

34.    On the afternoon of July 30, 2020, the Subject AAV experienced multiple serious and catastrophic mechanical, design and manufacturing failures resulting in the vessel losing transmission fluid, forward propulsion, freezing the engine and becoming dead in the water.  The AAV was flooded with water from multiple leaking sites and sinking to the bottom of the ocean trapping the servicemen inside while it attempted to return to the USS Somerset (LPD-25) from which it had departed earlier in the day. Plaintiffs are informed for over 45 minutes the servicemen were unable to open and/or keep open the subject defective cargo hatch door killing eight marines and a sailor, and causing extreme bodily, mental, and emotional and physical and mental injuries to the Plaintiffs. But for the defectively designed and manufactured AAV, the wrongful deaths and the injuries to the surviving Plaintiffs would not have occurred.

35.    It is believed and alleged that Defendants knew prior to the subject incident that the AAV was defectively designed, manufactured and maintained such that a sinking was imminent.  Defendants also knew and that the sole means of escape was through defectively designed cargo doors. The cargo hatch doors , which are supposed to serve as the means of egress in the event of an emergency but were defectively designed to be too heavy to open and/or keep opened, preventing any escape in case of such a sinking that occurred.  The cargo hatch doors were defectively designed too heavy and narrow to allow the Marines and Sailor to escape as the vessel submerged, thereby trapping them, and causing them to descend with the vessel.

36.    It is believed and alleged that Defendants knew prior to the subject

incident that there was no way for everyone to get out alive in a sinking. Defendants knew, the sole means of escape in an imminent sinking was through defectively designed cargo hatch doors. The cargo hatch doors, which are the only means of egress in an emergency sinking were defectively designed, manufactured, installed and maintained including, but not limited to, a locking system that was difficult to open, an inoperable lighting system, doors that were too difficult and heavy to open with the weight of the water and/or keep opened, or lock in an open position with the weight of the water, doors that were too narrow to easily escape with bulky gear on, preventing everyone from escaping in an imminent sinking like the one occurring in this incident, thereby trapping them, and causing them to drown as the vehicle descended 380 feet onto the ocean floor. The flooding of the AAV caused severe delay in Plaintiffs ability to get out of the vessel before drowning. Plaintiffs are informed for over 45 minutes the servicemen were unable to open and/or keep open the subject defective cargo hatch door resulting in nine wrongful deaths. But for the defectively designed and manufactured cargo doors, locking system, and other mechanical, design and manufacturing failures affecting the AAV's ability to function once impacted by water, the wrongful deaths would not have occurred.

37.   At all times herein Defendants, and each of them▯, so negligently, carelessly, recklessly, among other things, designed, manufactured, assembled, maintained, inspected, tested, trained, warranted, distributed and sold the Subject AAV and its component parts, including, but not limited to the transmission, compartment seals, hydraulic and mechanical bilge pumps, electrical system, warning systems, and escape hatches, and related systems and parts, so as to be the direct and proximate cause of its mechanical failures during foreseeable use, causing the vessel to become disabled and sink and the resultant injuries and death of eight Marines and the Sailor.

38.   It is believed and alleged that Defendants knew prior to the subject

incident that the AAV was defectively designed, manufactured and maintained such it prevented everyone aboard from escaping in case of such a sinking that occurred, thereby trapping them, and causing them to descend with the vessel.

## SECOND CAUSE OF ACTION

## STRICT PRODUCT LIABILITY

39.     Plaintiffs incorporate by reference each prior and subsequent allegation as though fully set forth herein

40.     At all relevant times, Defendants, BAE SYSTEMS, INC., and each of them, among other things, designed, manufactured, assembled, inspected, tested, maintained, trained, warranted, distributed, and sold the Subject AAV and its component parts.

41.     At all relevant times, the Subject AAV and its component parts, including but not limited to the transmission, compartment seals, plenum doors, hydraulic and mechanical bilge pumps, electrical system, emergency lighting system, warning systems, and escape hatches, and related systems and parts, were in the same condition as when they left Defendants' possession, except for normal wear and tear caused by defective manufacture, assembly, inspection, and/or design.

42.     At all relevant times, the Subject AAV and its components were used in a way that was reasonably foreseeable to Defendants, and each of them. The AAV and its component parts, design, manufacture, assembly, and maintenance were a substantial factor in causing the vessel to sink, and the subsequent deaths of eight (8) Marines and a Sailor and extreme bodily, mental, and emotional injuries and trauma to Plaintiffs.

43.    At all relevant times the Subject AAV was defective in that, among other things, the transmission, compartment seals, plenum doors, hydraulic and mechanical bilge pumps, electrical system, emergency lighting, warning and escape hatches, cargo hatch doors and related systems and parts contained manufacturing and/or design, and/or maintenance, and/or assembly defects that caused mechanical failures during normal operations, resulting in the vehicle being disabled, taking on water, and its subsequent sinking.

44.    By virtue of the foregoing defects and conditions in the Subject AAV and its component parts, the risks associated with the design thereof outweigh its benefits taking into account the potential harm to the AAV occupants, the likelihood that this harm would occur, the existence of several alternative designs at the time of the design and manufacture, and the cost of safer alternative designs; each of which could have been implemented prior to the disaster that is the basis of this lawsuit.

45.    Additionally, as manufactured, designed, assembled, maintained, distributed, and sold, the Subject AAV, its transmission, compartment seals, plenum doors, hydraulic and mechanical bilge pumps, electrical system, emergency lighting, warning systems, escape systems, cargo hatch doors and related systems and parts, were defective as the Subject AAV suffered catastrophic mechanical failure and becoming disabled in the water. While disabled, water leaking into the vessel at several locations and was not removed by the mechanical

and electrical bilge pumps as because its performance was degraded due a design. This caused a cascade of other mechanical failures.  In addition, the Marines and Sailor were unable to escape the vehicle as it sank due to their inability to see within the dark cargo bay and due to delay caused by extreme difficulty in opening the cargo hatches. As a result, the Subject AAV did not perform as safely as an ordinary consumer would have expected it to on the occasion in question and the Marines and Sailor drowned.  Plaintiffs are informed, believe, and allege Defendants failed to warn the government about risks associated with use of the subject AAVs that were known to the Defendants but not the government.

Plaintiffs are informed, believe, and allege no contract or purchase order was given until after the completion of the design of the subject AAV, and Defendants were not operating under the government's direction and oversight.

46.	It is believed and alleged that Defendants knew prior to the subject incident that the AAV was defectively designed, manufactured and maintained and would sink.  Defendants knew the sole means of escape was through defectively designed cargo doors.  The cargo hatch doors are supposed to serve as the means of egress in the event of an emergency but were defectively designed to be too heavy to open and/or keep opened, preventing any escape in case of such a sinking that occurred. The cargo hatch doors were defectively designed too heavy and narrow to allow the Marines and Sailor to escape as the vessel submerged, thereby trapping them, causing them to descend with the vessel and drown. This also

caused extreme bodily, mental, and emotional injuries and trauma to Plaintiff. Defendants supplied and placed the subject AAV's into the system of commerce in exchange for compensation. The Products that were delivered to foreseeable users and were defective as it did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way. The Products entered the stream of commerce prior to manifestation of the defect. Strict liability extends in favor of the users and consumers, such as Plaintiffs. The Products did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.  It is believed and alleged that the design was completed by Defendants prior to the purchase order.  As a proximate result of the harmed and suffered significant injuries and damages as set forth herein. The Products' failure to perform safely was a substantial factor in causing Plaintiffs harm. It is believed and alleged that Defendants failed to warn the United States of the dangers in the equipment's use about which they knew, but the United States did not.

### **THIRD CAUSE OF ACTION**
### **BREACH OF WARRANTIES**

47.    Plaintiffs incorporate by reference each prior and subsequent allegation as though fully set forth herein.

48.    There existed at the time of this accident certain warranties of fitness for a particular purpose and merchantability that were implied from the sale of the Subject AAV and its component parts to the United States by these Defendants,

and each of them, regardless of any writing to eliminate them.

49.   The warranty of fitness for a particular purpose was breached by the Defendants for the reasons set forth herein because the Subject AAV and its components were completely and wholly inadequate for the purpose intended, safe flight.

50.   The warranty of merchantability was breached by the Defendants because the Subject AAV and its component were not of fair or average quality as compared to other similar vessels made by competitors or of the same quality as others manufactured by these Defendants in that this one failed to function as required.

51.   The warranty of merchantability was breached by these Defendants because the Subject AAV was not of fair or average quality as compared to other similar vessels.

52.   As a direct and proximate result of the breaches of warranty and the conduct of Defendants, BAE SYSTEMS, BAE, and each of them, the plaintiffs suffered severe physical, emotional, and mental injuries and trauma.

## PUNITIVE DAMAGES

53.   The acts, omission and/or negligence of Defendants, and each of them, were a substantial factor in causing Plaintiffs' injuries, and the direct and proximate cause of the injuries and damages sustained by Plaintiffs.

54.   Defendants, and each of them, acted with oppression, fraud and/or malice, among other things, they acted with a willful and conscious disregard for the rights and safety of Plaintiffs.[1]

---

[1] " Malice" includes conduct evincing a conscious disregard of the probability that a defendant's conduct will result in injury to others. *See Grimshaw v. Ford Motor Co.,* (1981) 119 Cal. App. 3d 757.

"Oppression" in the Civil Code Section 3294 means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."

"Conscious disregard" for purposes of proving "oppression" does not require "willful" actions.

**COMPLAINT FOR DAMAGES**

55.     Defendants, and each of them, knew or should have known that the conditions of the AAV were a safety hazard that posed a danger to human life, including, but not limited to, inadequate means of ingress and egress, among other dangerous conditions. Defendants, and each of them, knew or should have known the AAV would foreseeably lead to harm and/or injuries to the health and safety of our service men and women. Defendants, and each of them, intentionally chose not to take reasonable steps to design and manufacture the AAV for safe use and failed to warn on the defects known to them.

56.     Defendants, and each of them, acted with malice, oppression and/or fraud, among other things, they acted with a willful and conscious disregard for the rights and safety of Plaintiffs despite knowing the risk of serious injury that could likely result from the unsafe and dangerous condition of the AAV.

57.     Defendants, and each of them, by themselves and/or through their employees and/or agents, acted with malice in that their despicable conduct was carried on with a willful and conscious disregard of the rights or safety of Plaintiffs.

58.     Defendants, and each of them, by themselves and/or through their employees and/or agents, acted with oppression in that their despicable conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights.[2]

59.     Defendants knew that their conduct would likely and within a high degree of probability cause harm to Plaintiffs. The conduct of Defendants, and each of them, was fraudulent in that each of them engaged in intentional misrepresentation, deceit, or concealment of material facts known to them, including that the premises lacked sufficient and safe fire safety measures and a safe means of egress. The information was fraudulently withheld from Plaintiffs.

---

Cal. Civ. Code Section 3294(c)(2); CACI 3940 & 3941; *Major v. Western Home Ins. Co.,* (2009) 169 Cal. App. 4th 1197, 1225-1226.
[2]

60.  Defendants, and each of them, and each of their employees' and/or agents' egregious conduct, including malice, oppression, and fraud, were substantial factors in causing the incident and Plaintiffs' injuries. An officer, director, and/or a managing agent of Defendants, and each of them, authorized the employees' or agents' wrongful conduct, and/or adopted, ratified, or approved the conduct after it occurred. An award for punitive damages in a sum according to proof at trial is, therefore, justified, warranted and appropriate under the facts and circumstances of this case.

## PRAYER

WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:

1.      For general damages according to proof;

2.      For special damages in the form of present and future medical expenses, present and future lost earnings, benefits, and impairment of earning capacity, property damage and other out of pocket losses according to proof;

3.      For pre-judgment interest;

4.      For compensatory and punitive damages;

5.      For costs of suit herein; and

6.      For such other and further relief as the court may deem proper.


Dated: July 21, 2022          LAW OFFICE OF FRANK S. CLOWNEY III


_/s/ Frank S. Clowney III /s/_____
FRANK S. CLOWNEY III
Attorney for Plaintiffs Eduardo Alexis Leiva
Castro and Joshua Luis
Email: worklaw@sbcglobal.net

## **JURY DEMAND**

Plaintiffs Eduardo Alexis Leiva Castro and Joshua Luis demand a jury trial in this action.

Dated: July 21, 2022        LAW OFFICE OF FRANK S. CLOWNEY III


*/s/ Frank S. Clowney III /s/*
FRANK S. CLOWNEY III
Attorney for Plaintiffs Eduardo Alexis
Leiva Castro and Joshua Luis